We'll hear the next case, United States v. Zuckerman. Thank you, Chief Judge Katzmann, and may it please the Court. The chart set forth on page 2 of our opening brief tells this Court everything it needs to know about what an extreme outlier the sentence is in this case. The $10 million fine imposed on the defendant is not only the single largest fine ever imposed on a tax offender by several orders of magnitude. It is 40 times the upper end of the guidelines range used by the District Court in this case. It is 100 times the amount of the fine recommended by the Probation Office, and it is 215 times the average fine received by tax offenders who inflicted similar tax losses to the defendant in this case. Now, that is significant, the nature of, the extreme nature of the outlier in this case because . . . Don't we also, though, at least on review, we assess the sentence as a whole? You do. And then that means not only the amount of the fine, but also the sentence of imprisonment. And in this case, what are we to make of the fact that the above guidelines fine, which you've noted, is combined with a guidelines minimum prison term? Sure. I mean, I think that's an important point, Your Honor. We would agree the Court should analyze the sentence as a whole. And on that, I think the relevant benchmark is the prison sentence that Mr. Zuckerman received, which was 70 months, although at the lower end of the guidelines, was still unusually harsh. And this is set forth at pages 236 to 237 at the Joint Appendix. Eighty-seven percent of the defendants convicted with a similar offense level as Mr. Zuckerman receive a downward variance on the prison sentence. And the average downward variance is 27 months downward, two and a half years. So I think that that only, looking at the sentence as a whole, only makes the extreme fine here even more extraordinary, because you have a sentence, prison sentence, that the government itself acknowledged, and this is at pages 305 to 306 of the Joint Appendix, the government acknowledged that a within guidelines prison sentence in this case was sufficient to deter other quote-unquote would-be tax sheets, as the government said. But yet on top of that prison sentence, unusually harsh as it was, the District Court imposed a $10 million fine, which was extraordinary by any single measure. When the Court imposed that, was there a request for an explanation or an objection that there was no explanation for the fine that you're challenging as excessive? Your Honor, there was no specific objection at that hearing. The District Court did provide some explanation, and we can walk through the very limited explanation she provided. Now, we've set forth, at footnote one of our reply brief, the cases showing that there's no requirement for an objection to preserve a substantive reasonableness challenge, which is the front-line challenge that we've made to the fine in this case. So the fact that there were That's just an objection that it's too high, not an objection that there wasn't a sufficient explanation for it. Well, sort of. And I think Objection that there's not a sufficient explanation for it, that's a procedural objection, isn't it? Yes and no. You're right that the failure to provide an adequate explanation can be a procedural flaw, but I think as the Gall case, the Singh case from this Court, and the Sindema case from this Court as well, make clear that the failure to provide an explanation, which is commensurate with the degree of the variance, is indeed a substantive flaw in the sentence. That's what the Gall case makes clear on page 50. This Court just reiterated it a month ago in the Singh case. You can go back to the Sindema case, and that ultimately, that's the fundamental failure in the sentence, is not only did the District Court go extraordinarily beyond anywhere any other court had gone with respect to a tax offender on the fine, but there is nowhere near the kind of explanation that one would expect for this kind of extreme variance. And let me just point out three ways in which the explanation provided here was wholly deficient. First of all, there was no explanation or effort whatsoever to deal with other tax offenders and to explain the extraordinary disparity in the fine imposed in this case. Second of all, there was absolutely no explanation as to how she arrived at the $10 million figure. Why $10 million? Why not $5 million? Why not $1 million? Why not $250,000? Why not $20 million? No explanation at all as to how she arrived at this extraordinarily large figure. And then third, Your Honors, there was no effort to explain why this kind of extreme fine was necessary to achieve any legitimate purpose of the sentencing laws on top of the already unusually harsh prison sentence that the District Court had imposed, a prison sentence that the government itself recognized was alone sufficient to deter other would-be tax cheats in the government's words at page 306 of the joint appendix. For those reasons, the explanation that the District Court provided here can't possibly be sufficient under this Court's precedence, under the Supreme Court's precedent, to justify the extreme outlier sentence in this case. We have no objection to the restitution amount? We have not objected to the restitution amount. Mr. Zuckerman has paid that amount. All paid? It is paid, Your Honor. And in that respect, too, the sentence is actually different than most. In that case, it is by no means the case that all defendants convicted of these offenses paid restitution. Mr. Zuckerman not only paid it, he paid it by the time of sentencing. That was part of the plea agreement, wasn't it? It was, Your Honor. It was. And we've taken responsibility for that. The District Court recognized that Mr. Zuckerman accepted responsibility for his offenses. Mr. Zuckerman was convicted of serious offenses. For that, he could expect a serious sentence. But like all defendants, rich or poor, he was entitled to a sentence that avoided unwanted disparities and that there was no greater than necessary for penal purposes. The sentence in this case cannot possibly be justified under that standard. We would ask the court to set it aside and remand the case for a full resentencing. One of your, as I understand it, arguments about procedural unreasonableness is that the District Court did not fairly consider Mr. Zuckerman's ability to pay the $10 million. Right. And I would like you to help me understand that. So he contends that the information that he gave in November 9, 2016 was outdated by the time of the sentencing in March of 2017. But did he provide updated information in either the January 13th sentencing or his March 20th, 2017 supplemental submission despite the government's submission in its February 7th, 2017 memorandum, arguing that Zuckerman, and I'm quoting, can pay a substantial fine and should be awarded to do so? And did he object at the sentencing hearing that he couldn't pay the $10 million? Your Honor, he did not provide the updated information. And I think that this gets to a notice problem. And it's similar to the one that this court confronted in the Elgeith case, which is that going into that hearing, the financial information was seven months old. It also included assets that belonged to Mr. Zuckerman's wife, not Mr. Zuckerman. But the fundamental point is, Mr. Zuckerman had absolutely no idea that the District Court was contemplating a fine anything like this magnitude and was completely caught off guard. The District Court did say in a sidebar at the plea that she was interested in the pre-sentence submissions and any other examples of cases where you have this degree of violation of law. In particular, how fines have been calculated. So she telegraphed her interest in this issue early on. Now you're quite right, Your Honor and Judge Pooler, but in our sentencing memorandum, we addressed her question, how have fines been calculated in other cases like this? At pages 165 to 166 of the joint appendix. And what we explained was, is that the largest fine for a case like this was 100,000, and that the average fine was far below that, actually about 35,000. The government in response, and this is at page 322 of the JA, provided essentially no data whatsoever, but made a blanket request for an above guidelines fine, and that was it. So based on the data we had provided again, she wanted to know what was happening in other cases. We told her, it was $100,000 at the top end, $35,000 average. Absolutely no reason for Mr. Zuckerman to go into that hearing and believe that a $10 million fine was in the universe of things that could possibly be imposed. If he had known that, and this is like the Elgif case that this court decided. If he had known that, he would approach that hearing completely differently. He would have updated the data. He would have, any defendant in this situation would have provoked that, approached that differently. And that in itself is a fundamental notice problem with the sentence in this case. With respect to just the MISCO transaction. So as I understand it, that Mr. Zuckerman transferred ownership interest in MISCO and its subsidiaries to his wife. So why doesn't it follow that her assets are not relevant in assessing her husband's ability to pay? Well, I think we've explained, this is at pages 16 to 17 of our brief, that the different types of assets that were involved in the amount that the government had pointed to, essentially $30 million in net worth, and why Mrs. Zuckerman's assets weren't properly included in that. And why, if you separate out those assets, you get to about $15 million. Now, that would make Mr. Zuckerman a wealthy man by any standard. But that in itself doesn't justify the fine in this case. Wealthy or poor, people come into a court and expected to be treated the same. And no defendant can be subjected to a sentence that has unjustified disparities, and that is far beyond anything necessary to achieve the penal purposes, as the government itself acknowledged. When it recognized that the unusually harsh prison sentence in itself would be sufficient for deterrent purposes. Thank you. Thank you, your honors. May it please the court, good morning. The $10 million fine imposed by Judge Thorpe. Does the government now support the $10 million fine? Excuse me, your honor? Does the government now support the $10 million fine? Yes, completely yes, your honor. You didn't ask for it. We asked for a substantial variance above what the five guideline provided in the case, your honor. You didn't mention an amount. We didn't mention an amount, your honor. But the judge in the exercise of her discretion and consistent with the commentary in the guidelines was perfectly entitled to fix on that amount given all the facts in the case, and let me please explain. But why ten and not five or not 20? I mean, she can fix on it, but ordinarily she would explain the calculation, wouldn't she? No, there's nothing in this court's case law that requires that when there's a variance, that the judge has to explain all of the guideposts along the way to what the judge ultimately arrives at. So she could just pick a number anywhere? And if it's consistent, I think, with the underlying facts of the case, and there's a financial wherewithal to pay it, and it's consistent with the 3553 factors that the court relies on in imposing that, the answer is yes, Judge Pooler, and I'd like to explain those 3553 factors. Please, go ahead. First, this is a case that involved a breathtaking series of fraud schemes. It wasn't just one fraud scheme, it was a series of fraud schemes that imposed $45 million loss on the IRS, New York State, and New York City. There was significant uncharged or dismissed conduct. That is, the defendant was caught red-handed in the sales and inventory of a gallery in 2002, in that case, he had engaged in a three-year scheme to ship paintings to out-of-state, or actually take physical custody of them, and to collude with the gallery owners to create false invoices showing that they had been submitted or transferred out-of-state. The district court is perfectly allowed to take account of uncharged conduct. Absolutely, and Judge Torres, in the exercise of her discretion, specifically cited to the uncharged and dismissed conduct when imposing the sentence in this case. It's also important to remember that although the defendant touts the fact that he paid over $37 million in restitution, restitution is not really a criminal component of the sentence. It's giving back to the victims that which the defendant had fraudulently obtained. So there's no real diminution of the defendant's resources before he engaged in these schemes. So Judge Torres was left, at the end of the day, with the fact that, unlike in virtually every other case, defendant used his corporations to pay the lion's share of the restitution. And was left with having to decide, given the breathtaking scope of this fraud, how do I impose a significantly punitive aspect of the sentence to make sure, in her words, and Judge Torres was emphatic in how she was relying on the deterrent aspect of this sentence when imposing the fine. What she said is, I am mindful that there are others just like Mr. Zuckerman are watching to determine whether they too will have to pay their share. What clear- Your adversary says that the government's position had been that the sentence was a sufficient deterrent. Is that correct or not? With respect to the incarcerative aspect of it, Judge, we never retreated from the submission that we made in our sentencing memo, that there should be a substantial variance, upward variance, with respect to the fine. But she was higher than your recommendation, wasn't she, in terms of the incarceration portion? No, we recommended a guideline sentence of the 72 to 87 months, and she imposed the bottom of what we had recommended. You recommended the guideline range? Correct. The Supreme Court specifically recognized in Kimbrough that variations in sentences are the price the courts have to pay for the remedy that was effectuated in Booker. And the fact that this sentence with respect to the fine might be the highest criminal tax fine ever imposed is not standing alone sufficient to warrant overturning it. First, this court has never, ever relied on pure statistics in vacating a variance in any case based on a fine. Someone's got to be the highest. Excuse me? Someone's got to be the highest. That's correct. Someone has to be the highest. The next highest. The next highest, below the $10 million. I think limited to this record based on criminal tax cases, I think the case that defendant cites is $100,000, but we argued in our- That's $900,000 difference between the next highest and Mr. Zuckerman? $9,900,000. $9,000,000, I'm sorry. $9,900,000. Yes. So that's a big variance. It is a significant variance, but warranted based on the facts of the case, Judge Pooler. First of all, it's important to keep in mind, too, the guidelines commentary to the fine guideline, specifically notes in application four, that it was the commission's intent that, as a general matter, that the fine range faced by defendants in cases should generally be twice what the loss is or twice what the gain is. Here, the loss caused by the defendant was $45 million. So the guidelines specifically authorized Judge Torres, if she wanted to, to upwardly depart based on that. Now mind you, we're not arguing for a upward departure. We committed not to, but our position is a simple one. If the guidelines commission specifically said that they envisioned that the standard range for a fine should be twice the gain or the loss, then it could hardly be considered an abuse of discretion by the sentencing judge after looking at all the sentencing data to impose a fine that is significantly below what she was authorized to upwardly depart to. And Judge Torres, during the proceeding, touched all of the 3553 bases. She noted all of the factors that she had to consider, including disparities. So our position is simple, that when the judge- Is it clear that when she was discussing all of those, she was not also discussing the imprisonment term? I mean, it seems she was discussing both. I think that that's clear, Judge. There is no indication that she was focusing on the fine with respect to and breaking it down. But she was, I think, speaking largely to with respect to all of the components of the sentence when she said that she had considered disparities. And I want to respond to the claim that this worked somehow as a surprise to Mr. Zuckerman. First, any claim of lack of notice or surprise is foreclosed by the Supreme Court's opinion in Irizarry. In Irizarry, the court made clear that with respect to variances, there is no pre-notice requirement for the district court to upwardly vary, as opposed to an upward departure. And second, that claim of lack of notice falls on a factual grounds because Judge Torres presaged at sentencing that she envisioned imposing a significant financial aspect to the sentence when she was going to impose sentence. That's why the defendant commissioned the study that they did. So their suggestion that they had no appreciation of what the judge was going to do, why did they commission the study to present all those facts to the judge about what has gone on in other cases? They contemplated a $10 million fine. They might not have contemplated that, but I think, Judge, where the fine statute would have authorized the court to impose twice the loss, that is $90 million. It's hardly an abuse of discretion for the judge to impose a sentence on a small fraction of that, when the only other financial component of the sentence was the disgorgement of the funds that the defendant had illegally obtained. I want to talk about the ability to pay argument that your honor raised, because as a fact, the defendant raised no objection to the pre-sentence report at the time of sentencing, which noted a combined net worth of $37 million. And with respect to your question to counsel, Chief Judge Katzman, about whether the combined wealth should be considered, all of the facts in this case make clear that Morris Zuckerman, the defendant, was the source of all the combined wealth for him and his wife. There's no indication that she had a job at any point. And so all of the money, even though he may have titled certain financial accounts in her name, it was his generation of those proceeds that led to that money. And this court should consider the Mezco asset, even though it was transferred to the defendant's wife, because that transfer took place right around the time of sentencing. And so this court should, of course, take into consideration the fact that defendant was, in effect, Mezco the corporation. Is Mr. Zuckerman presently incarcerated? He is. I see that my time's up. May I conclude briefly, Chief Judge Katzman? The standard that this court must apply in this case is whether the sentence shocks the conscience. Based on the conscientious review of all the facts in this case and the thoughtful sentence imposed by Judge Torres, I respectfully submit that this sentence does not even stir the conscience, much less shock it, for that reason this court should affirm. Thank you. Thank you, your honors. Your honors, less than a month ago in the Singh case, this court observed that a three and a half time departure from the guidelines stirred the conscience. The departure in this case was 40 times the higher end of the guidelines. I would submit that if that doesn't shock the conscience, then I don't know what would. The Singh case is also relevant. In that case, the court did specifically rely on statistics to find that the sentence was unreasonable. So my- There are also apparent factual errors in the district court's discussion. You're correct, your honor. Absolutely. But I think the Singh case is informative. It's also informative in terms of the level of explanations that is demanded for this kind of variance. With respect to the 3553 factors, my friend mentioned the supposed breathtaking complexity of the offenses. There was a sentencing enhancement here for sophisticated means. One of the ways in which the district court's explanation was deficient was she never explained why that enhancement didn't already account for the so-called complexity of the offenses. With respect to uncharged conduct, that wasn't mentioned at the sentencing hearing. It came in the later issued statement's reasons form, but that can't be a basis for the sentence. The reasons for the sentence have to be given at the hearing. With respect to guidelines- Your argument with respect to uncharged conduct was that even though the PS, even though the factual findings were adopted, no reasons were given at sentencing. Yes, your honor. Absolutely. With respect to guidelines note four, that is with respect to departures. The government itself, as my friend acknowledged, agreed not to seek a departure with respect to the fine. This was a variance, so that note is simply inapplicable, even if it was applicable. The fact that there was a tax loss here, we've explained that the average fine for defendants convicted of similar tax losses was $35,000, I believe, your honor. Your honor, the principle that they're arguing for here is a dangerous principle that would extend far beyond this case. The Mancilla-Mendez case of the Fifth Circuit that we cite at page 46 of our opening brief involved a defendant who was convicted of illegal reentry. A fine of $75,000 was recommended. The district court increased it because of the perceived ability of the defendant to pay $125,000. The Fifth Circuit in that case rightly said that just because they think the defendant can pay it isn't a sufficient basis for increasing the fine. And beyond just the defendant's ability to pay, the extraordinary departure here, rules beyond any previous fine, itself has to demand an extraordinary explanation. The Gall case makes that clear from the Supreme Court. The Singh case makes that clear from this course. The Sindema case makes that clear. Should we remand to the district court? What directions would we be giving the district court? Well, we would ask you to give strong direction with respect to the appropriate factors and strong direction that she would have to explain why the already harsh prison sentence was not sufficient for deterrence purposes. Particularly given the government's own acknowledgement at page 305 to 306 that it was sufficient for deterrent purposes. We would also ask that this court remand for a full resentencing. As your honor mentioned at the outset, Chief Judge Katzman, a sentence is a package. And this sentence was already harsh with respect to the prison sentence. And then to add on the fine on top of that, it suggests that here, as in the Singh case, the court should remand for a full resentencing. So that Mr. Zuckerman can have the benefit of what every defendant is entitled to. A sentence that avoids unwanted and unnecessary and unexplained disparities. We would also ask, your honor, just briefly, we moved for a stay of the fine in this case. The court expedited the proceedings in this case. We would urge this court to enter a stay of the fine in this case. Mr. Zuckerman not only is serving his time in prison, he's required to pay $250,000 each month with respect to a fine that is simply invalid. And we would urge this court to stay the payment of that fine. For us for a stay? We previously submitted one, your honor, and the court expedited the proceedings here. If your honor would like, we'd be happy to submit another written motion. But we believe that it would be appropriate for this court to issue a stay pending the decision in this case. Previous motion for a stay? The court denied the motion for a stay and expedited the proceedings in this case, and we're here today. Yes. Thank you, your honors. Thank you. Thank you both for your arguments. The court will reserve decision.